**THE PORT AUTHORITY** OF NY & NJ

**Law Department**

*4 World Trade Center*
*150 Greenwich Street*
*New York, NY 10007*

January 3, 2019

<u>VIA ELECTRONIC FILING</u>
Honorable William H. Pauley III
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

   Re: **Theresa Harrison v. Port Authority of New York and New Jersey**
      **Civil Action No. 1:17-cv-06281-WHP**

Dear Judge Pauley:

This office represents defendant The Port Authority of New York and New Jersey (the "Port Authority" or "Defendant") in the above-referenced action. This letter is written in accordance with Your Honor's Individual Rules to request a pre-motion conference for leave to file a motion for summary judgment and an adjournment of the pre-trial conference scheduled for January 18, 2019 until after the motion is fully briefed. The current fact discovery end date is January 4, 2019 and it is the Defendant's position that Plaintiff cannot make out a prima facie claim of discrimination under Title VII of the Civil Rights Act of 1964, as amended, and that Defendant has demonstrated legitimate non-discriminatory reasons for terminating Plaintiff's probationary employment.

**Factual Background**
Plaintiff's claims arise out of her probationary employment with the Port Authority as an operations services supervisor in the Aeronautical Operations Unit at Newark Liberty International Airport. Plaintiff claims that Defendant unlawfully discriminated against her based on her race, sex, and national origin, that Defendant created a hostile work environment, and that Defendant wrongfully terminated Plaintiff's employment, each claim in violation of Title VII of the Civil Rights Act, as amended.

Plaintiff was hired by the Port Authority on August 19, 2016 as a probationary employee and began her training as an operations services supervisor on August 22, 2016. The duties and responsibilities of an operations services supervisor include, but are not limited to, monitoring the airfield for wildlife, removing wildlife from the airfield, conducting runway inspections; all of which require that the operations services supervisor be able to safely operate and navigate a motor vehicle on and around active runway areas. Operations services supervisors must undergo numerous training qualifications in order to become certified to drive a motor vehicle on and around the airfield because of the potential for catastrophic injuries in the event of a runway

incursion. As such, an operations services supervisor may not drive on or around the airfield until they have passed all the required tests and received the required certifications. During Plaintiff's probationary period, it became evident that she failed to possess the basic competency skills required for the position. Between September 9, 2016 and October 3, 2016, training staff documented Plaintiff's unsatisfactory progress to senior supervisory staff on five separate occasions. On October 5, 2016, Plaintiff's supervisor documented at least eight deficiencies on Plaintiff's evaluation, which included that she was unable to identify basic taxiway signs and markings and that she was unaware of how to confirm runway status. On December 22, 2016, Plaintiff committed an egregious violation known as a "runway incursion," when she drove her vehicle onto an active runway without authorization, where a 747 cargo plane was about to land, causing that plane to have to "go around" and not land on the runway as planned. Plaintiff's employment was terminated on December 23, 2016 as a result of this serious infraction.

**Basis of Motion**

To establish a prima facie claim for discrimination, Plaintiff must show that: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128 (2d Cir. 2003). There is no dispute that Plaintiff has satisfied the first and third prongs of the test: she is a black woman of Jamaican national origin and her probationary employment was terminated by the Port Authority. However, Plaintiff has not, and cannot, satisfy the second and fourth prongs: it is clear that Plaintiff did not possess the requisite skills for the position despite her experience, and it was Plaintiff's own incompetency, which led to the runway incursion for which her employment was terminated. There is no evidence that Plaintiff was discharged under circumstances giving rise to an inference of discrimination. Contrary to Plaintiff's self-serving claims that her supervisors were reluctant to train her, Plaintiff was offered and received additional training, during which her on-going deficiencies were documented. It is well-settled that summary judgment is appropriate where the plaintiff has "produced no evidence of circumstances giving rise to an inference of defendants' discriminatory animus other than the conclusory allegations that plaintiff (was) treated differently because of (her) race and color." Lumhoo v. Home Depot USA, Inc., 229 F.Supp.2d 121, 148 (E.D.N.Y. 2002).

Plaintiff has also failed to establish that Defendant's actions created a hostile work environment under Title VII. A racially hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). The conduct must have both altered the conditions of the victim's employment by being subjectively perceived as abusive by the plaintiff, and have created an objectively hostile or abusive environment – one that a reasonable person would find to be so. See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295 (N.Y. 2004), citing Harris at 23. Plaintiff claims that the following instances created a hostile work environment: when Plaintiff was reprimanded by a supervisor for using her personal cell phone, when Plaintiff was told one time by a supervisor that she needed to lose weight to fit into her uniform, and when that supervisor drew a hangman to represent incorrect answers during a training exercise. While there is no evidence to establish the supervisor's weight-related comments other than the Plaintiff's claims,

being reprimanded by a supervisor for employment-related issues does not give rise to a hostile work environment claim.  And while deposition testimony established that the supervisor plays the "hangman game" to record incorrect answers during certain training exercises, even assuming *arguendo* that it was done in poor taste, a hostile work environment requires more than a few isolated incidents of racial enmity. Snell v. Suffolk County, 782 F.2d 1094 (2nd Cir. 1986). Not only has Plaintiff here failed to establish any such ongoing conduct, but Plaintiff has further failed to show that any of these claimed instances interfered in any way with her job performance.

Finally, Plaintiff has failed to establish that she was wrongfully terminated by Defendant under Title VII.  For reasons stated above, Defendant contends that Plaintiff has failed to make out a prima facie case for discrimination, assuming *arguendo* that such a prima facie case is established, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for its actions.  Finally, the burden shifts back to Plaintiff to prove that discrimination was the true reason behind Defendant's actions.  Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204 (E.D.N.Y 2018), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The evidence clearly shows that Plaintiff's probationary employment with the Port Authority was terminated for the objective failures by her to meet the position's requirements, which ultimately culminated in a serious safety violation (i.e. runway incursion).  The Plaintiff's conclusory claim that discrimination caused the termination fails as a matter of law.

Should the Court find that Plaintiff has established any colorable claim for discrimination under Title VII, Defendant cannot be held liable for alleged discriminatory acts of an employee's supervisor under the *Faragher/Ellerth* defense.  This affirmative defense is comprised of two elements: (1) the employer exercised reasonable care to prevent and correct promptly any discriminating behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunity provided by the employer or to avoid harm otherwise. Ferraro v. Kellwood Co., 440 F.3d 96, 102 (2nd Cir. 2006).  Further, where a tangible employment action was taken against the plaintiff/employee, the defense is only available to an employer where the tangible employment action is not linked to the supervisor's discriminatory harassment. *Id.* Defendant asserts that the *Faragher/Ellerth* defense is applicable here because Plaintiff's termination is not, and cannot be, linked to any alleged discriminatory harassment by Plaintiff's supervisor.  Plaintiff was terminated after committing a runway incursion, which forced a 747 aircraft to go around and was unable to land as scheduled.  Termination for a documented safety violation cannot be linked to any alleged discriminatory behavior by a supervisor.  As to the first prong of the defense, Defendant has clearly established through deposition testimony and document discovery that it had numerous anti-harassment policies in place during the period of Plaintiff's employment in 2016, as well as an Office of Equal Employment Opportunity, to which Plaintiff failed to avail herself.  And under the second element, Plaintiff failed to utilize any internal complaint procedures to report any alleged discrimination or harassment by her supervisors. Therefore, Defendant is entitled to the *Faragher/Ellerth* defense and as such is not liable for any alleged discriminatory or harassing behavior by its employees.

For the above-stated reasons, the Port Authority hereby requests leave to move for summary judgment and an adjournment of the pre-trial conference scheduled for January 18, 2019 until after the motion is fully briefed.

**THE PORT AUTHORITY** OF NY & NJ

Respectfully submitted,

Cheryl Alt

Cheryl Alterman, Esq.
The Port Authority of New York and New Jersey
Law Department
4 World Trade Center
150 Greenwich Street, 24th Floor
New York, New York 10007
(212) 435-3431


cc:  Lisa A. Jones, Esq. (via ECF)

4